Michael **WHITTLESEY**, Petitioner–Appellant,

v.

Patrick **CONROY**, Warden; Attorney General of the State of Maryland, Respondents–Appellees.

No. 01–6158.

United States Court of Appeals, Fourth Circuit.

Argued April 3, 2002.

Decided Aug. 23, 2002.

**ARGUED:** Wendy Michelle Marantz, Supervising Attorney, Appellate Litigation Program, Georgetown University Law Center, Washington, D.C., for Appellant. Ann Norman Bosse, Assistant Attorney General, Criminal Appeals Division, Office of the Attorney General, Baltimore, Maryland, for Appellees. **ON BRIEF:** Steven H. Goldblatt, Director, Dan Rohwer–Nutter, Student, Dominique Thomas, Student, Appellate Litigation Program, Georgetown University Law Center, Washington, D.C., for Appellant. J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, Office of the Attorney General, Baltimore, Maryland, for Appellees.

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and STAPLETON, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation.

Affirmed by published opinion. Judge WIDENER wrote the opinion, in which Chief Judge WILKINSON concurred. Judge STAPLETON wrote a concurring opinion.

## OPINION

WIDENER, Circuit Judge.

Michael Whittlesey appeals from an order of the United States District Court for the District of Maryland, denying his petition for a writ of habeas corpus and dismissing the case with prejudice. Whittlesey argues that the decision of the Court of Appeals of Maryland violates his constitutional double jeopardy rights because, after being prosecuted for robbery and assault with intent to rob, he was subsequently prosecuted for first degree murder. The district court concluded that the Maryland appellate court's determination that the murder prosecution did not violate the Double Jeopardy Clause was neither contrary to, nor an unreasonable application of clearly established federal law. Whittlesey timely appealed the district court determination, but the district court denied his motion for a certificate of appealability. We granted a certificate of appealability, however, on the issue of whether the state court's decision is contrary to or an unreasonable application of federal double jeopardy law. For the reasons that follow, we affirm the district court.

### I.

In 1984, Michael Whittlesey was tried and convicted by a jury for robbery, assault with intent to rob, theft of an automobile belonging to Griffin's father, and theft of a cassette player and a number of cassette tapes, all arising out of the 1982 disappearance of James Griffin. The details of the crime and ensuing investigation are described at length in *Whittlesey v. State*, 326 Md. 502, 606 A.2d 225 (1992) (*Whittlesey* I), and *Whittlesey v. State*, 340 Md. 30, 665 A.2d 223 (1995) (*Whittlesey II*), and need not be repeated here. Whittlesey was sentenced to a ten-year term for the robbery, a consecutive fifteen-year term for the theft of the automobile and the remaining convictions were merged.

Whittlesey appealed his conviction and sentence to the Maryland Special Court of Appeals on the basis of three alleged trial court errors not at issue in this appeal. The Maryland intermediate appellate court affirmed Whittlesey's convictions and Whittlesey's petitions for writ of certiorari were denied by both the Court of Appeals of Maryland and the Supreme Court of the United States.

When the body of James Griffin, Whittlesey's robbery victim, was finally found in 1990 nearly eight years after his disappearance, Whittlesey was indicted in Baltimore County Circuit Court for Griffin's murder. Whittlesey's motion to dismiss on double jeopardy grounds was denied by the Maryland circuit court, whereupon Whittlesey noted an interlocutory appeal and the Court of Appeals of Maryland, on its own motion, issued a writ of certiorari to consider whether the Double Jeopardy Clause of the Fifth Amendment prohibited the prosecution of Whittlesey for the murder of Griffin.

The Maryland Court of Appeals affirmed the circuit court's denial of Whittlesey's motion to dismiss on double jeopardy grounds. See *Whittlesey v. State*, 326 Md. 502, 606 A.2d 225 (1992) (*Whittlesey I*). Whittlesey was subsequently convicted by a jury of both first degree pre-meditated murder and felony murder and sentenced to death. In an appeal to the Maryland Court of Appeals, Whittlesey again argued his double jeopardy claim, which was re-

jected for a second time. See *Whittlesey v. State*, 340 Md. 30, 665 A.2d 223, 244–48 (1995) (*Whittlesey II*). Despite the rejection of Whittlesey's double jeopardy claim, the court ordered a new capital sentencing proceeding on other grounds. The Supreme Court declined certiorari review. See *Whittlesey v. Maryland*, 516 U.S. 1148, 116 S.Ct. 1021, 134 L.Ed.2d 100 (1996).

Whittlesey was resentenced to life imprisonment, consecutive to all sentences previously imposed, and his subsequent appeal of this sentence was unsuccessful. After Whittlesey was denied post conviction relief in state court, he filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland, which was denied and is the subject of this appeal.

In his § 2254 petition to the district court, Whittlesey argued that his "guaranteed rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution were violated when [he was] put to trial for murder." Recognizing that its review was governed by the amendments to the habeas corpus statutes contained in the Anti Terrorism and Effective Death Penalty Act (AEDPA), the district court denied Whittlesey's petition for habeas corpus and dismissed the case with prejudice after concluding that "[t]he [Maryland] appellate court's determination that the murder prosecution did not violate the Double Jeopardy Clause was neither contrary to, nor an unreasonable application of clearly established federal law as it existed at that time." This court granted a certificate of appealability and we now affirm the district court's judgment.

## II.

■ Although our review of the district court's decision on a petition for habeas corpus based on a state court record is de novo, see *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547, 555 (4th Cir.1999), like the district court, the scope of our review is prescribed by the AEDPA at 28 U.S.C. § 2254(d)(1) and (2). The AEDPA of 1996 prohibits federal courts from granting an application for a writ of habeas corpus with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision contrary to clearly established federal law as determined by the Supreme Court of the United States or the decision was an unreasonable application of federal law as determined by that Court. 28 U.S.C. § 2254(d). The Court explained the constraint placed on federal courts by the AEDPA in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ We begin with the Fifth Amendment, which provides in pertinent part that "[n]o person shall ... be subject for the same offense to be put twice in jeopardy of life or limb." U.S. Const., Amend. V. This constitutional guarantee applies to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). At issue in

this case is the protection the Fifth Amendment guarantees against successive prosecutions for the same offense. See *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ In *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Supreme Court reiterated that the "same-elements" test announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), is the appropriate test for determining whether two offenses are the same for double jeopardy purposes:

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the *"Blockburger"* test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*Dixon*, 509 U.S. at 696, 113 S.Ct. 2849 (citations omitted).

In analyzing whether Whittlesey's prosecution for murder was barred by the Fifth Amendment's protection against successive prosecutions, the Maryland court correctly identified the *Blockburger* test as controlling and applied it to the facts of this case.*

■ Whittlesey was indicted for first degree murder, which in Maryland is proven by a determination by the trier of fact that the homicide (1) was wilful, deliberate, and premeditated, or (2) was committed in the perpetration of a felony (felony murder). The jury returned a verdict of guilty on both first degree murder and felony murder. The Maryland appellate court examined the proof necessary for a conviction under Maryland's first degree murder statute and concluded that:

> Under the *Blockburger* test, subsequent prosecutions for premeditated murder, murder in the second degree, and manslaughter, all encompassed in the murder indictment, are not barred by the prior convictions under the robbery indictment. Neither premeditated murder, murder in the second degree, nor manslaughter share identical elements with robbery, assault with intent to rob, or theft, nor are any of them a lesser included offense of premeditated murder, murder in the second degree or manslaughter.

*Whittlesey I*, 606 A.2d at 236.

Although the Maryland court found that *Blockburger* did not bar Whittlesey's prosecution for first degree murder, in applying the *Blockburger* test to felony murder, the court found otherwise:

> The underlying felony is an essential ingredient of felony murder. In the case *sub judice*, it is readily apparent that the underlying felony is robbery. Robbery therefore is a lesser included offense of the felony murder. Inasmuch

---

* We note that the Maryland court also determined that the narrow reach of the traditional *Blockburger* test had been expanded in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). While declining to pinpoint the holding of *Corbin*, the court assumed that the application of the broader test announced in *Corbin* barred the prosecution of Whittlesey for murder. Subsequent to the Maryland decision, *Dixon* expressly overruled *Grady v. Corbin* and its more expansive "same-conduct" test. See *Dixon*, 509 U.S. at 704, 113 S.Ct. 2849. Thus the Maryland appellate court's assumption that the *Corbin* test barred the prosecution of Whittlesey for murder under any theory is irrelevant and we address the court's application of the *Blockburger* test and the associated *Diaz* exception.

as the charge of robbery filed against Whittlesey had been previously litigated, *Blockburger* bars a subsequent prosecution of him for murder in the first degree based on felony murder, unless the *Diaz* exception applies.

*Whittlesey I*, 606 A.2d at 236–37.

The result in this case is not dictated by the application of the *Blockburger* test alone, however. As the Maryland court recognized, the Supreme Court has acknowledged a significant double jeopardy exception, first contemplated in *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). *Diaz* held that the Double Jeopardy Clause did not bar a prosecution for homicide subsequent to a conviction for assault and battery where the victim died after the first conviction. The two crimes were not the same in all elements because, death being required for a homicide prosecution, was not present for assault and battery. *Diaz*, 223 U.S. at 448–449, 32 S.Ct. 250.

The Maryland court traced the history of the Supreme Court's treatment of what it characterized as the *Diaz* exception. Over time, the exception has been expanded beyond the particular situation in *Diaz*, where the crime was uncompleted because an element, the death, had yet to occur, to include instances where a crime was undiscovered or where "due diligence" failed to produce facts necessary to support the prosecution. As the Supreme Court explained in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980): "We recognized in *Brown v. Ohio*, 432 U.S. at 169, n. 7, 97 S.Ct. 2221 that '[a]n exception may exist where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.'" *Illinois v. Vitale*, 447 U.S. at 420 n. 8, 100 S.Ct. 2260.

Thus the Maryland court correctly found that the *Diaz* exception to the *Blockburger* test is not limited to an uncompleted or an undiscovered crime, rather, the Supreme Court has included within the exception the situation where "facts necessary to sustain that charge ... have not been discovered despite the exercise of due diligence." *Brown v. Ohio*, 432 U.S. 161, 169, n. 7, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In the case at hand, despite an extended search for James Griffin's body, a critical fact necessary to sustain a charge of murder had not been revealed, specifically, that James Griffin was dead and had died as a result of a homicide.

■ It is possible to prove the corpus delicti of murder in Maryland without producing a body, *see Hurley v. State*, 60 Md.App. 539, 483 A.2d 1298 (Md.1984), but as the Maryland court stated:

> But here, absent a body and lacking, therefore, an expert opinion as to the manner and cause of death, it would be difficult to establish, by way of circumstantial evidence, the elements called for under the murder indictment, namely, that Jamie was dead, that the manner of his death was felonious homicide, and that Whittlesey had killed him.

*Whittlesey I*, 606 A.2d at 238.

As we noted in *United States v. Ragins*, 840 F.2d 1184 (4th Cir.1988), the "undiscovered crime exception was not intended to permit the government to reprosecute a defendant simply because it has discovered more evidence strengthening its case." *Ragins*, 840 F.2d at 1193. But, such is not the case here where a required element of the crime of murder, a death, was undiscovered at the time of the robbery prosecution, despite a diligent search for James Griffin's body.

In determining that the discovery of the body and the cause of death were suffi-

cient missing facts to invoke the *Diaz* exception and allow Whittlesey's prosecution for murder subsequent to his robbery conviction, the Court of Appeals of Maryland applied what is called a "reasonable person" test "so often relied upon in the law" to the facts of the case. *Whittlesey I,* 606 A.2d at 236. Acknowledging that the Supreme Court has not had occasion to articulate how the *Diaz* exception should be tested in the context of undiscovered facts necessary to sustain the subsequent prosecution, the Maryland court articulated and applied its own test, stated as follows:

> a subsequent indictment on a second offense, otherwise barred by the Double Jeopardy Clause of the Fifth Amendment, is not barred if, at the time of prosecution for the earlier offense a reasonable prosecutor, having full knowledge of the facts which were known and in the exercise of due diligence should have been known to the police and prosecutor at that time, would not be satisfied that he or she would be able to establish the suspect's guilt beyond a reasonable doubt.

*Whittlesey I,* 606 A.2d at 236.

■ We cannot say that the Maryland court was unreasonable under 28 U.S.C. § 2254(d)(1) in its application of the *Diaz* exception. The exception is recognized in Supreme Court precedent in *Brown v. Ohio,* n. 7, 437 U.S. at 161, 97 S.Ct. 2221, and, as the Maryland court noted, there has been no clear articulation of the appropriate test for determining whether facts necessary to sustain the charge have not been discovered despite due diligence. To evaluate whether there were missing facts surrounding a prosecution which were necessary to sustain the charge is of necessity a fact-based inquiry. And, we are of opinion that a requirement to view those facts through the eyes of a reasonable prosecutor using due diligence is not an unreason-

able application of Supreme Court precedent. We are of opinion the application of the Maryland court was neither incorrect, nor erroneous, nor unreasonable. See *Williams v. Taylor,* Part IIB, 529 U.S. at 409, 120 S.Ct. 1495, *et seq.*

The judgment of the district court is accordingly

*AFFIRMED.*

STAPLETON, Senior Circuit Judge, concurring.

In my view, the constitutional principle applied by the Maryland Court of Appeals in this matter imposes far too great a burden on the interests protected by the Double Jeopardy Clause and would not be endorsed by the Supreme Court of the United States if presented to it. I nevertheless join the judgment of the Court.

A state's highest court is entitled to interpret the United States Constitution so long as it does so in a manner consistent with the holdings of the Supreme Court. For that reason, the AEDPA allows an inferior federal court to overturn a state judgment of conviction only if it is "contrary to" or "involve[s] an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), and "clearly established" in this context refers to "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

This is a situation in which the Supreme Court has not addressed the issue presented to the Maryland Court of Appeals. Nor has it endorsed a principle that can fairly be said to provide a rational basis for resolving that issue. In such circumstances, I believe the Maryland Court of

Appeals was entitled to fashion its own constitutional rule relying, if it chose, on the footnote dicta in Justice Brennan's concurrence in *Ashe v. Swenson* 397 U.S. 436, 453 n. 7, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (suggesting an exception to double jeopardy preclusion "where a crime is not completed or not discovered, despite diligence on the part of the police") and on the ensuing footnotes in *Vitale* and *Brown* noting that such an exception "may exist." *Vitale,* 447 U.S. at 420 n. 8, 100 S.Ct. 2260; *Brown,* 432 U.S. at 167 n. 7, 97 S.Ct. 2221.

Because I find no relevant "clearly established" Supreme Court case law, I agree with my colleagues that Whittlesey's judgment of conviction is not "contrary to," and does not "involve an unreasonable application of," such law.